# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-01153-SCT

*CAROLYN McGEHEE*

*v.*

*ROBERT DEPOYSTER, INDIVIDUALLY, AND IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT OF RICHTON SCHOOL DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/17/96 |
| TRIAL JUDGE: | HON. RICHARD WAYNE McKENZIE |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALBERT D. MALONE |
| ATTORNEY FOR APPELLEE: | J.B. VAN SLYKE |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | REVERSED AND REMANDED - 03/12/98 |

## CONSOLIDATED WITH

### 96-IA-01049-SCT

| | |
|---|---|
| DATE OF JUDGMENT: | 9/04/96 |
| TRIAL JUDGE: | HON. RICHARD WAYNE McKENZIE |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALBERT D. MALONE |
| ATTORNEY FOR APPELLEE: | J.B. VAN SLYKE |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | REVERSED AND REMANDED - 03/12/98 |
| MOTION FOR REHEARING FILED: | |

MANDATE ISSUED: August 12, 1999

**BEFORE PITTMAN, P.J., McRAE AND ROBERTS, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from a series of orders entered by the Circuit Court of Perry County in September, 1996 in a defamation action brought by the Principal of the Richton Elementary School against the Superintendent of the Richton School District, both individually and in his official capacity. In both her interlocutory appeal and her direct appeal, McGehee raises the issues of whether, pursuant to Miss. Code Ann. § 11-46-11(1), she was required to provide DePoyster with notice of the state law claims against him in his individual capacity as well as of charges she brought pursuant to 42 U.S.C. § 1983. In her direct appeal, McGehee further asserts that the circuit court erred in granting DePoyster's motion to dismiss on the basis of her failure to provide him with statutory notice. Finding that the notice provisions of Miss. Code Ann. § 11-46-1(1) are not applicable to a government employee sued in his individual capacity for actions not within his scope of employment or to actions brought pursuant to 42 U.S.C. § 1983, we reverse the circuit court's order of dismissal and remand for further proceedings.

I.

¶2. Front page headlines in the *Hattiesburg American* proclaimed that sparks were flying in the small town of Richton, Mississippi when Richton School District Superindent, Dr. Robert DePoyster, raised allegations that Richton Elementary School Principal, Carolyn McGehee, used "questionable disciplinary techniques" with the youngsters. DePoyster allegedly told television station WDAM that McGehee had violated school policy and made a mistake in judgment in allegedly locking Deborah Lott's five-year old son in a storage shed for detention. It further was alleged in the press that McGehee had washed another child's mouth out with soap after he swore and suspended an eleven-year-old child for fighting, after which she took him home, where he had stayed alone on the porch for four hours until his parents returned. The incidents apparently were investigated by the Department of Human Services.

¶3. McGehee filed a complaint in the Circuit Court of Perry County on March 31, 1995 against DePoyster, individually and in his official capacity as Superintendent of the Richton School District, as well as against Deborah Lott and Charles "Eddie-Boy" Woodward. She alleged that the three published false statements, defaming her and injuring her reputation, via the *Hattiesburg American* and WDAM television station, as well as to other third parties. She also raised allegations of civil conspiracy to defame, libel and slander, false light invasion of privacy and intentional infliction of emotional distress. Further, McGehee charged DePoyster, individually and in his official capacity, with violating 42 U.S.C. § 1983 in ordering her not to speak to or associate with members of the Richton School Board and by constructively denying her the right to a hearing.

¶4. DePoyster, Lott and Woodward denied the allegations raised in the complaint. DePoyster counterclaimed for damages for tortious interference with his contract and intentional infliction of emotional distress, asserting that through McGehee's acts of insubordination, the Richton School Board launched an investigation into unspecified allegations against him, resulting in his resignation under duress. McGehee sought dismissal of the counter-claim in her answer. DePoyster filed an amended answer on December 18, 1995, asserting that the action against him was barred by sovereign immunity and that he was immune in both his individual and official capacities, requiring the suit to be dismissed pursuant to Miss. Code Ann. § 11-46-9(1)(d).

¶5. On August 28, 1996, DePoyster filed a motion to dismiss, charging that the original complaint was filed without giving proper statutory notice. He further raised the 1993 revision of Miss. Code Ann. § 11-46-11 as a defense and asserted that the complaint should be dismissed because it was not filed within the statutory time period. Finding that McGehee failed to comply with statutory notice provisions, the circuit court dismissed her claims against DePoyster, both individually and in his official capacity, in a judgment filed September 4, 1996. An order dismissing DePoyster's counterclaim on the same grounds also was filed at that time.

¶6. McGehee filed a motion to reconsider, to correct judgment or to grant interlocutory appeal on September 5, 1996. She sought review of the dismissal of the § 1983 action against DePoyster, as well as the state court claims brought against him in his *individual* capacity. The circuit court overruled the motion to reconsider or correct the judgment as to DePoyster and certified the interlocutory appeal, granting the remaining parties, Lott and Woodward, a continuance pending proceedings before this Court.

II.

¶7. In both her direct appeal and her interlocutory appeal, the crux of McGehee's argument is whether Dr. DePoyster, individually, was entitled to statutory notice of the claims against him. She concedes that any action brought against him in his official capacity as Superintendent of the Richton School District required ninety days notice pursuant to Miss. Code Ann. § 11-46-11(1). McGehee contends, however, that the acts complained of did not fall within the scope and course of DePoyster's employment. Therefore, she asserts, suit brought against him in his *individual* capacity is not subject to the Sovereign Immunity Act's notice provisions. DePoyster, without citing any authority, argues that the notice of claim requirement also applies to suits brought individually against a government employee. He contends that he was acting in his official capacity and within the scope of his employment when the alleged actions occurred. Thus, he concludes that because there was no notice provided pursuant to § 11-46-11(1), subsequent questions of law cannot be entertained.

¶8. Miss. Code Ann. § 11-46-11(1) provides as follows for notice of tort claims against a governmental entity and its employees:

> After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity, and, if the governmental entity is participating in a plan administered by the board pursuant to Section 11-46-7(3), such chief executive officer shall notify the board of any claims filed within five (5) days after the receipt thereof.

Miss. Code Ann. § 11-46-11(1)(Supp. 1997). McGehee acknowledges that the notice requirement applies to suit brought against an employee, acting in his official capacity. The issue, therefore, is whether it is applicable to actions brought individually against a government employee.[1]

¶9. Notice of claim statutes "'are enacted primarily for the benefit of governmental defendants,'" but serve "the additional purpose of notifying the proper public officials of dangerous physical conditions

or inappropriate and unlawful governmental conduct, which allows for prompt corrective measures." *Felder v. Casey,* 487 U.S. 131, 142-143, 108 S. Ct. 2302, 101 L. Ed. 2d 123, 140-141 (1988)(*citing* Civil Actions Against State Government, Its Divisions, Agencies, and Officers, 564 (W. Winborne, ed. 1982)).[(2)] Most jurisdictions have some sort of statutory notice provisions, with the majority of states requiring only substantial compliance with notice requirements. In those jurisdictions where the statutes have not specified their applicability or inapplicability to individual actions, courts have held that statutory notice of claim requirements do not apply to a government employee sued in his individual capacity. *See, e.g.,* **Kalpin v. Cunningham,** 401 N.Y.S. 2d 659, 660 (N.Y. App. Div. 1978); **Vermeer v. Sneller,** 190 N.W. 2d 389, 392 (Iowa 1971).

¶10. DePoyster asserts that regardless of whether he is sued in his official or in his individual capacity, the notice requirement must be met because he was acting within the scope and course of his employment. Indeed, an action against a government employee in his individual capacity may be subject to notice of claim requirements if the act complained of occurred within the scope and course of his employment:

> Nevertheless, implicit in the supreme court's ruling is the notion that governmental employment, standing alone, does not trigger the notice provision of the Act. **Van Valkenburg** [**v. Warner,** 602 N.E. 2d 1046, 1049 (Ind. Ct. App. 1992)]. Where the plaintiff elects to sue the governmental employee in her individual capacity, notice is required only if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment. **Id.**

**Bienz v. Bloom,** 674 N.E. 2d 998, 1004 (Ind. Ct. App. 1996). DePoyster stepped outside of the scope and course of his employment when he talked to the media rather than resolving the situation internally. Moreover, the acts complained of in the case *sub judice,* including libel, slander and defamation, are considered to be outside the scope and course of employment pursuant to the sovereign immunity statute.[(3)] Miss. Code Ann. § 11-46-5(2) provides that :

> For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

Miss. Code Ann. § 11-46-5(2)(Supp. 1997). DePoyster points to § 11-46-7(2) for the proposition that a government employee cannot be sued individually for actions occurring within the course and scope of his employment, but neglects to cite the qualifying language analogous to that found in § 11-46-5(2), *supra.*

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. *For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.*

Miss. Code Ann. § 11-46-7(2)(Supp. 1997)(emphasis added).

¶11. Sections 11-46-5(2) and 11-46-7(2) expressly provide that an employee shall not be considered as acting within the scope and course of his employment for conduct amounting to defamation, libel and slander, the very charges brought by McGehee against DePoyster. We therefore do not construe § 11-46-11(1) as requiring notice to DePoyster or other government authorities of suit brought against him individually for acts outside of the scope of his employment.

III.

¶12. McGehee next contends that the lower court erred in dismissing her 42 U.S.C. § 1983 claim against DePoyster on the basis of failure to provide proper notice pursuant to § 11-46-11(1). The United States Supreme Court addressed this issue in *Felder v. Casey,* 487 U.S. 131, 140-141, 108 S. Ct. 2302, 101 L. Ed. 2d 123, 139-140 (1988), holding that state notice of claims statutes are not applicable to § 1983 actions brought in state courts. Wisconsin's notice of claim statute required a written notice of claim within 120 days of the alleged injury or a showing that the government subdivision, agency, or employee had actual notice of the claim and would not be prejudiced by the absence of written notice. *Felder,* 487 U.S. at 136, 101 L. Ed. 2d at 136. The Supreme Court found that the statute was preempted when § 1983 actions were brought in state court because it conflicted with the purpose of 42 U.S.C. § 1983 and its enforcement would "frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court." 487 U.S. at 138, 101 L. Ed. 2d at 138. In so holding, the Supreme Court first looked with approval at the reasoning employed by the federal courts to find that notice of claim statutes were not applicable to § 1983 cases there.

> These courts have reasoned that, unlike the lack of statutes of limitations in the federal civil rights laws, the absence of any notice-of-claim provision is not a deficiency requiring the importation of such statutes into the federal civil rights scheme. Because statutes of limitation are among the universally familiar aspects of litigation considered indispensable to any scheme of justice, it is entirely reasonable to assume that Congress did not intend to create a right enforceable in perpetuity. Notice-of-claim provisions, by contrast, are neither universally familiar nor in any sense indispensable prerequisites to litigation, and there is thus no reason to suppose that Congress intended federal courts to apply such rules, which "significantly inhibit the ability to bring federal actions."

*Felder,* 487 U.S. at 140, 101 L. Ed. 2d at 139 (quoting *Brown v. United States,* 742 F.2d 1498, 1507 (D.C. App. 1984). The Court found the federal court precedent instructive because:

> [f]irst, it demonstrates that the application of the notice requirement burdens the exercise of the federal right by forcing civil rights victims who seek redress in state courts to comply with a requirement that is entirely absent from civil rights litigation in federal courts. This burden, as we explain below, is inconsistent in both design and effect with the compensatory aims of the federal civil rights laws. Second, it reveals that the enforcement of such statutes in § 1983 actions brought in state court will frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court. States may not apply such an outcome-determinative law when entertaining substantive federal rights in their courts.

487 U.S. at 141, 101 L. Ed. 2d at 139-140.

¶13. The *Felder* Court found that the Wisconsin statute operated as a condition precedent to actions brought in state court against governmental entities or their employees and provided them an affirmative defense not available to them in federal court. *Id.,* 487 U.S. at 144, 101 L. Ed. 2d at 141. The Court reiterated that "'Congress . . . surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action.'" *Id.* (quoting *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S. Ct. 1938, 1943, 85 L. Ed. 2d 254 (1985)). Emphasizing that it was the decision of Congress, and not the state legislatures, to subject states and their employees to liability for violation of civil rights, the Court continued, stating that

> States, however, may no more condition the federal right to recover for violations of civil rights than bar that right altogether, particularly where those conditions grow out of a waiver of immunity which, however necessary to the assertion of state-created rights against local governments, is entirely irrelevant insofar as the assertion of the federal right is concerned, and where the purpose and effect of those conditions, when applied in § 1983 actions, is to control the expense associated with the very litigation Congress has authorized.

> This burdening of a federal right, moreover, is not the natural or permissible consequence of an otherwise neutral, uniformly applicable state rule. Although it is true that the notice-of-claim statute does not discriminate between state and federal causes of action against local governments, the fact remains that the law's protection extends only to governmental defendants and thus conditions the right to bring suit against the very persons and entities Congress intended to subject to liability.

487 U.S. at 144-145 (citation omitted), 101 L. Ed. 2d at 141-142.

¶14. We further note, *Felder* notwithstanding, that nothing in § 11-46-1 purports to insulate the State, its political subdivisions or any of its employees from liability for constitutional violations. To the contrary, § 11-46-17, which provides for the creation of the Tort Claims Fund and liability insurance, authorizes plans of self-insurance established by political subdivisions to "provide coverage for liabilities *outside the provisions of this chapter*, including but not limited to liabilities arising from Sections 1983 through 1987 of Title 42 of the United States Code . . ." Miss. Code Ann. § 11-46-17(2)(Supp. 1997)(emphasis added). The statute, therefore, expressly places § 1983 actions beyond its purview.

¶15. The United States Supreme Court's decision in *Felder* clearly holds that statutory notice of claim provisions are inapplicable to § 1983 actions brought against governmental entities or employees in state court. Moreover, Miss. Code Ann. § 11-46-17 places § 1983 actions outside the purview of the Tort Claims Act. Therefore, Miss. Code Ann. § 11-46-11(1) cannot be used to bar McGehee's § 1983 claims against DePoyster merely because they were brought in state court rather in federal court.

IV.

¶16. In her direct appeal, McGehee contends that the circuit court erred in granting DePoyster's motion to dismiss the state and federal court claims brought against him individually. She concedes that the circuit court correctly dismissed her common law claims against DePoyster in his official capacity because of failure to comply with the notice provisions of Miss. Code Ann. § 11-46-11(1). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *T.M. v. Noblitt*, 650 So. 2d 1340, 1342 (Miss. 1995); *Overstreet v. Merlos,* 570 So. 2d 1196, 1198 (Miss. 1990). While DePoyster's motion to dismiss was not filed under any specific rule, we construe it as a motion for relief pursuant to either Miss. R.Civ. P. Rule 12(b)(2) or 12(c), because it challenges the legal sufficiency of the complaint; to wit, whether the jurisdictional prerequisites of filing suit against a governmental employee were met. The circuit court's dismissal of McGehee's § 1983 claims against DePoyster on grounds of the notice-of-claim statute is completely contrary to the United States Supreme Court's decision in *Felder, supra.* Further, Miss. Code Ann. §§ 11-46-5(2) and 11-46-7(2) expressly state that an employee shall not be considered as acting within the scope and course of his employment for conduct amounting to defamation, libel and slander, the charges raised against DePoyster by McGehee. The notice provisions of § 11-46-11(1) therefore were not applicable to the cause of action against DePoyster in his individual capacity. The circuit court erred in dismissing her claims on basis of the statutory notice basis. Finally, based on the early stage of the pleadings in which the motion to dismiss was filed and granted, we cannot say that "'it appears beyond a doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief,'" and the case should be remanded for further proceedings on the state law claims against DePoyster, in his individual capacity, as well as on the § 1983 action.

V.

¶17. The notice of claim provisions of Miss. Code Ann. § 11-46-1(1) are not applicable to actions brought individually against government employees acting outside of the scope of their employment. Further, pursuant to *Felder v. Casey,* the United States Supreme Court expressly held that state notice of claim statutes cannot be applied to § 1983 actions brought in state court against a government employee in his individual or official capacity. Accordingly, the circuit court erred in dismissing the § 1983 action against DePoyster as well as the common law actions against him in his individual capacity on the basis of failure to provide notice pursuant to § 11-46-1(1). We reverse the order of the circuit court's order of dismissal and remand the case for further proceedings consistent with this opinion.

¶18. **REVERSED AND REMANDED**.

**PRATHER, C.J., PITTMAN, P.J., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., NOT PARTICIPATING.**

1. Whether injuries arising from acts of libel and slander are injuries as defined by Miss. Code Ann. § 11-46-1(h) is not at issue and we do not address whether they are encompassed by the Tort Claims

Act.

2. Our Mississippi cases indicate only that "[t]here are a number of valid reasons why the Legislature would require that the Chief Executive Officer of a governmental entity be given advance notice of planned litigation against it, and the Legislature saw fit to implement specific and detailed requirements for the granting of this notice." *City of Jackson v. Lumpkin*, 697 So. 2d 1179, 1181 (Miss. 1997). The opinion does not further elaborate.

3. A January 5, 1994 Mississippi Attorney General's Opinion notes that while members of the Foster Care Review Board enjoy public official immunity for acts arising from their duties on the Board, "[w]hat clearly is not protected are actions that do not fall within the scope of their duties on the Board or conduct that constitutes fraud, malice, libel, slander, defamation or criminal offense." A.G. Op. #93-0972 (1994 WL 32528).